UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Charles E. McInnis, | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| LVNV Funding, LLC, and | ) | |
| Resurgent Capital Services, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.     This is an action brought by Plaintiff, Charles E. McInnis, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter "FCRA"), for actual and statutory damages, plus attorneys' fees, and costs for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. (hereinafter "FDCPA"), and for compensatory and punitive damages for the Defendants' violations of South Carolina common law set forth herein.

2.     The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.     Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

4.      To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §1681s-2(b), which is one of the cornerstone provisions of the FCRA.

5.      One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6.      The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570

2

(1970)].

## JURISDICTION AND VENUE

7.     This Court has Jurisdiction under 15 U.S.C. §1681p, 15 U.S.C. §1692, and 28 U.S.C. §1331.

8.     Venue is proper in the Florence Division because the Plaintiff resides in Marlboro County, and the Defendants transacted business throughout South Carolina and in this division.

## PARTIES

9.     Plaintiff, Charles E. McInnis, is a resident and citizen of the State of South Carolina, Marlboro County, and is over the age of twenty-one (21) years.  Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.     Defendant LVNV Funding LLC ("LVNV") is a Delaware corporation that may be served with process through its registered agent for service of process, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.  Defendant LVNV was in all respects and at all times relevant herein doing business in the state of South Carolina and in this division.

11.     Defendant LVNV is a debt buyer that purchases portfolios of consumer debt, including defaulted debts previously owned by banks, finance companies and other debt buyers.

12.     LVNV has no employees.

13.     LVNV's business is to invest in consumer debt and loan assets.  LVNV then outsources the management of its portfolio of accounts to Defendant Resurgent Capital

Services L.P. ("Resurgent").

14.     Defendant Resurgent is a Delaware corporation that may be served with process through its registered agent for service of process, Corporation Service Company, 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492.  Defendant Resurgent was in all respects and at all times relevant herein doing business in the state of South Carolina and in this division.

15.     Defendant Resurgent is a "debt collector" as that term is defined in 15 U.S.C. 1692a(6) and is regularly engaged in the collection of consumer debts.

16.     Defendant Resurgent performs all actions on behalf of LVNV as LVNV has no employees.

17.     Defendant Resurgent exercises sole discretion over the servicing of debts for LVNV-owned accounts and determines the appropriate course of action for each account it manages for LVNV.

18.      Defendants LVNV and Resurgent each acted in concert together with the other and contributed to the damages caused to the Plaintiff.

19.     All acts done by Defendant Resurgent were done on its own behalf and on behalf of Defendant LVNV.

20.     Defendant LVNV acted as principal over its agent, Defendant Resurgent, and maintained control over all actions taken by Defendant Resurgent.

21.     Defendants are furnishers of information to multiple Consumer Reporting Agencies ("CRAs"), including Equifax, Experian, and TransUnion, in that they regularly report

4

account data on consumer credit cards.

**<u>FACTUAL ALLEGATIONS</u>**

22.     In December 2025, Plaintiff was sued by a collection company for two accounts that did not belong to him.

23.     After being served with the lawsuit, Plaintiff went online to check his credit reports and discovered he had been the victim of identity theft.

24.     On or about December 9, 2025, when Plaintiff attempted to obtain a copy of his Experian credit report, Experian denied his request.

25.     On or about December 9, 2025, Plaintiff was able to obtain a copy of his Equifax credit report.  Upon review, Plaintiff discovered numerous accounts had been opened in his name without his knowledge.  Specifically, Defendants were reporting a collection account as "LVNV Funding, LLC Care of Resurgent Capital Services LP, Acct. No. *4289" (hereinafter referred to as the "Account") as belonging to Plaintiff.  The Account was originally a Capital One Bank USA NA account.  Plaintiff has never had a Capital One credit card account.

26.     On or about December 9, 2025, Plaintiff was able to obtain a copy of his Trans Union credit report.  Upon review, Plaintiff discovered the Account was reporting on his Trans Union credit report.

27.     On or about December 10, 2025, Plaintiff sent Trans Union a dispute letter **("First Trans Union Dispute")** stating he had received a lawsuit for a collection account that did not belong to him.  Thereafter, upon reviewing his credit report, Plaintiff discovered he had

5

been the victim of identity theft. Plaintiff specifically disputed the Account as a fraudulent account opened in his name without his knowledge or permission. Trans Union received Plaintiff's dispute on December 16, 2025, and thereafter forwarded same to Defendants.

28. On or about December 10, 2025, Plaintiff sent Experian a dispute letter **("First Experian Dispute")** stating he had attempted to obtain a copy of his Experian credit report online but was denied. Plaintiff stated he had been served with a collection lawsuit for an account that did not belong to him and, upon review of his other credit reports, Plaintiff discovered he had been the victim of identity theft. Plaintiff specifically disputed the Account as a fraudulent account opened in his name without his knowledge and requested it be removed from his Experian credit report. Plaintiff also disputed six (6) addresses at which he had never lived, and five (5) phone numbers he had never used. Experian received Plaintiff's dispute on December 16, 2025, and thereafter forwarded same to Defendants.

29. On or about December 10, 2025, Plaintiff sent Equifax a dispute letter **("First Equifax Dispute")** stating he had been served with a collection lawsuit and thereafter, upon reviewing his credit reports, discovered he had been the victim of identity theft. Plaintiff learned multiple fraudulent accounts, including the Account, and other incorrect information was reporting on his credit reports. Plaintiff specifically disputed the Account being reported by Defendants as fraudulent. Plaintiff also disputed five (5) addresses at which Plaintiff has never lived. Equifax received Plaintiff's dispute on December 16, 2025.

30. On or about December 19, 2025, Equifax sent Plaintiff a letter requesting Plaintiff

provide two documents verifying his identity.

31.     On or about December 20, 2025, Defendant Resurgent sent Plaintiff a letter requesting additional documents concerning his claim of identity theft.

32.     On December 26, 2025, Plaintiff filed a police report with the Marlboro County Sheriff's Office stating he was the victim of identity theft.  Plaintiff specifically identified the Account opened in his name as fraudulent.

33.     On or about December 27, 2025, Trans Union sent Plaintiff Investigation Results wherein Trans Union informed Plaintiff that Defendants had verified the reporting of the Account as accurate.  With the Investigation Results, Trans Union provided an updated credit report which confirmed that Defendants continued to report the fraudulent Account as a derogatory Account belonging to Plaintiff.

34.     On or about January 2, 2026, Defendant Resurgent sent Plaintiff a letter stating it manages the Account for LVNV Funding LLC, and that it had initiated a review inquiry recently received from Halsted Financial Services, LLC, the current servicer of the Account.

35.     On or about January 6, 2026, Defendant Resurgent sent Plaintiff two identical letters, wherein Defendant Resurgent requested additional documents concerning his claim of identity theft.  With both letters, Defendant Resurgent provided a copy of Capital One statements which contained the disputed fraudulent address at which Plaintiff had never lived: 829 Antioch Church Road, Bennettsville, SC 29512-6207.

36.     On or about January 7, 2026, Experian sent Plaintiff Dispute Results to his

December 10, 2025, dispute, wherein Experian informed Plaintiff the Account had been deleted from his Experian credit report.

37.  On or about February 4, 2026, Plaintiff sent Trans Union a second dispute letter **("Second Trans Union Dispute")** wherein Plaintiff informed Trans Union he had received its Investigation Results, but the fraudulent Account continued to be reported as derogatory account belonging to him.  Plaintiff asked Trans Union to remove the fraudulent Account from his credit report.  Trans Union received Plaintiff's second dispute letter on February 9, 2026, and thereafter forwarded same to Defendants.

38.  On or about February 4, 2026, in response to Equifax's request for proof of identity and address verification, Plaintiff sent Equifax a copy of his driver's license, Social Security card, his first dispute letter, and Equifax's December 19, 2025, letter.   Equifax received Plaintiff's letter on February 17, 2026.

39.  On or about February 4, 2026, Plaintiff sent Defendant Resurgent a dispute letter **("First Defendant Resurgent Dispute")** wherein Plaintiff stated he had received Defendant Resurgent's January 6, 2026, letter requesting additional information regarding the Account.  Plaintiff informed Defendant Resurgent the Account was a fraudulent account opened in his name without his knowledge or permission, that he did not have any Capital One accounts, he did not receive a Capital One credit card, had not used a Capital One credit card, and had never received any Capital One statements.  Plaintiff informed Defendant he did not live at 829 Antioch Church Road in Bennettsville, SC, and that the address  belonged to his estranged wife.  Plaintiff included a copy of the police report he

filed with his letter.

40.    Defendant Resurgent received Plaintiff's First Dispute letter on February 9, 2026.

41.    On or about February 11, 2026, Defendant Resurgent sent Plaintiff a letter stating it manages the Account for LVNV Funding LLC and had initiated a review of the inquiry recently received from Halsted Financial Services, LLC.

42.    On or about February 12, 2026, Trans Union sent Plaintiff Investigation Results and an updated credit report wherein the fraudulent Account was still reporting as belonging to Plaintiff.  With the Investigation Results, Trans Union provided an updated credit report which confirmed that Defendants continued to report the fraudulent Account as a derogatory Account belonging to Plaintiff.

43.    On or about February 12, 2026, Equifax sent Plaintiff a letter stating the information Plaintiff provided as proof of his identity did not match the information they had on his credit file.  Accordingly, Equifax requested Plaintiff send two items of documentation verifying his identity and address.

44.    On or about February 16, 2026, Defendant Resurgent sent Plaintiff a letter requesting additional documents concerning his claim of identity theft.    With the letter, Defendant Resurgent provided a copy of a Capital One statement addressed to the fraudulent address at which Plaintiff has never lived: 829 Antioch Church Road, Bennettsville, SC 29512-6207.

45.    On or about April 1, 2026, Plaintiff sent Trans Union a third dispute letter (**"Third Trans Union Dispute"**).  In his letter, Plaintiff informed Trans Union the Account was

still reporting as belonging to him on his credit report. Plaintiff asked Trans Union to delete the fraudulent Account. With his letter, Plaintiff provided a copy of the police report he filed regarding the fraud. Trans Union received Plaintiff's third dispute on April 7, 2026, and thereafter forwarded same to Defendants.

46.     Plaintiff never received any results of Trans Union's re-investigation into his third dispute.

47.     On or about April 1, 2026, Plaintiff sent Equifax a second dispute letter **("Second Equifax Dispute")**. In his letter, Plaintiff again informed Equifax he had been the victim of identity theft and that he had previously sent proof of his identity to Equifax. Plaintiff again disputed the Account as a fraudulent account, opened in his name without his knowledge or permission. Plaintiff also disputed five (5) addresses at which he never lived. With his letter, Plaintiff provided a copy of the police report he filed regarding the fraud, a copy of his Social Security card, and a copy of his driver's license. Equifax received Plaintiff's second dispute on April 10, 2026, and thereafter forwarded same to Defendants.

48.     Plaintiff never received any results of Equifax's re-investigation into his second dispute.

49.     On or about April 1, 2026, Plaintiff sent Defendant Resurgent a second dispute letter **("Second Defendant Resurgent Dispute")**. In his letter, Plaintiff again informed Defendant Resurgent he did not have any Capital One accounts, the Account was not his account, it was a fraudulent account opened in his name without his knowledge or permission, and he did not live at 829 Antioch Church Road in Bennettsville, S.C. Plaintiff

provided Defendant Resurgent with another copy of the police report he filed regarding the theft of his identity.

50.     Defendant Resurgent received Plaintiff's Second Resurgent Dispute on April 6, 2026.

51.     On or about April 9, 2026, Defendant Resurgent sent Plaintiff another letter stating it had initiated a review inquiry recently received from Halsted Financial Services, LLC, the current servicer of the Account.

52.     On or about April 21, 2026, Defendant Resurgent sent Plaintiff a letter informing Plaintiff that upon researching the matter, the Account had been closed.

53.     On or about May 15, 2026, Plaintiff sent Equifax a third dispute letter **("Third Equifax Dispute")**.  In his letter, Plaintiff again informed Equifax he had been the victim of identity theft.  Plaintiff again disputed the Account as a fraudulent account, opened in his name without his knowledge or permission, as well as five (5) addresses at which he never lived.  With his letter, Plaintiff provided a copy of the police report he filed regarding the fraud, a copy of his Social Security card, and a copy of his driver's license.  Equifax received Plaintiff's dispute on May 19, 2026, and thereafter forwarded same to Defendant.

54.     Plaintiff never received any results of Equifax's re-investigation into his third dispute.

55.     To date, despite repeated notice that the Account was a fraudulent Account opened in Plaintiff's name without his knowledge or permission, and receipt of Plaintiff's police report, Defendants have continued to report the Account as belonging to Plaintiff to the

11

national credit reporting agencies and third parties.

56.     While Defendants have continued to report false, fraudulent, and inaccurate information on Plaintiff's credit reports, those credit reports have been viewed by 364110039 via Creditwise Capital1 TU-B, Creditwise Capital1 TU-C, Syncb/Car Care Discount Tire, and Capital One.

57.     Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver."); *see also Smith v. Encore Capital Group, Inc.,* 966 F. Supp. 2d 817 (E.D. Wis. 2013).

58.     Credit reporting is recognized as a powerful tool used to extract payment from consumer debtors. *Purnell v. Arrow Fin. Servs., LLC,* 303 Fed. Appx. 297, 304, n.5 (6th Cir. 2008); *see also Malone v. Cavalry Portfolio Servs., LLC,* 2015 U.S. Dist. LEXIS 158310, 2015 WL 7571881 (W.D. Ky. Nov. 24, 2015); *Quale v. Unifund CCR Partners,* 682 F.Supp.2d 1274 (S.D. Ala. 2010); *Sullivan v. Equifax, Inc.,* 2002 U.S. Dist. LEXIS 7884, 2002 WL 799856 (E.D. PA. Apr. 19, 2002).

59.     The FDCPA provides consumers with "statutorily-created rights to be free from 'being subjected to false, deceptive, unfair, or unconscionable means to collect a debt.'" *McCamis v. Servis One, Inc.,* No. 8:16-CV-1130-T-30AEP, 2016 U.S. Dist. LEXIS 99492 (M.D. Fla. July 29, 2016); see also *Church v. Accretive Health, Inc.,* 654 Fed. Appx. 990,

2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. 2016).

60.     An injury-in-fact sufficient to satisfy Article III standing requirements "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Church*, at 993, quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

61.     Defendants have subjected Plaintiff to false, deceptive, unfair, and unconscionable means to collect a consumer debt.

## COUNT ONE
### (Fair Credit Reporting Act)

62.     The Plaintiff adopts the averments and allegations of paragraphs 22 through 61 hereinbefore as if fully set forth herein.

63.     Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information said Defendants had provided to a CRA.

64.     Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRA pursuant to §1681i.

65.     Defendants negligently violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by the Defendant to the CRAs.

66.     Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the CRAs.

67.     Defendants negligently violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify

13

all CRAs that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

68. The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

69. Defendants completely failed and/or refused to conduct a detailed and searching inquiry as required by the FCRA. Instead, Defendants simply verified the Account each and every time it received an ACDV regarding Plaintiff's dispute of the Account as fraudulent, even after Defendants received Plaintiff's police report, both directly and indirectly from the Plaintiff through the CRAs.

70. As a result of the Defendants' violations set forth above, the Plaintiff suffered harm to his reputation and credit reputation, had a substantial drop in his credit scores, delayed applying for credit, and suffered lost time and enjoyment of life, anxiety, fear, loss of sleep, anger, fright, physical pain and sickness and mental anguish, as well as damages for attorneys' fees, costs, certified mail expenses, and other out of pocket losses. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

71. In addition, Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendants alleged herein, would not have been necessary.

72. Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

**COUNT TWO**
**(Fair Credit Reporting Act)**

73. The Plaintiff adopts the averments and allegations of paragraphs 22 through 72

hereinbefore as if fully set forth herein.

74.    Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation after receiving notice that the Plaintiff disputed the Account information Defendants had provided to a CRA.

75.    Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRA pursuant to §1681i.

76.    Defendants willfully violated 15 U.S.C. §1681s-2(b) by failing to conduct an investigation as to the accuracy of the information reported by Defendants to a CRA.

77.    Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to the CRA.

78.    Defendants willfully violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all CRAs that the reporting of the Account the subject of this action was inaccurate, incomplete, false, and misleading.

79.    The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

80.    Defendants willfully and intentionally failed and/or refused to conduct a detailed and searching inquiry as required by the FCRA.  Instead, Defendants simply verified the Account each and every time it received an ACDV regarding Plaintiff's dispute of the Account as fraudulent, even after Defendants received Plaintiff's police report.

81.    As a result of the Defendants' violations set forth above, the Plaintiff suffered harm

to his reputation and credit reputation, had a substantial drop in his credit scores, delayed applying for credit, and suffered lost time and enjoyment of life, anxiety, fear, loss of sleep, anger, fright, physical pain and sickness and mental anguish, as well as damages for attorneys' fees, costs, certified mail expenses, and other out of pocket losses.  Plaintiff is entitled to actual damages in an amount to be determined by the jury.

82.    Due to Defendants' willful violations of the FCRA, Plaintiff's entitled to punitive damages in an amount to be determined by the jury.

83.    In addition, Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendants alleged herein, would not have been necessary.

84.    Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT THREE
### (Violation of the Fair Debt Collection Practices Act)

85.    Plaintiff hereby adopts all of the allegations set forth in paragraphs 22 through 84 as if set forth fully herein.

86.    Within the one year prior to the filing of this lawsuit, Defendants have engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act with respect to the Plaintiff and an alleged consumer debt.

87.    Defendants are a debt collector as that term is defined in 15 U.S.C. 1692a(6) and is regularly engaged in the collection of debts.

88.    Defendants communicated to a person credit information which was known, or which should have been known to be false in violation of §1692e(8).  Specifically, Defendants reported to the CRAs and other debt collectors that Plaintiff owed a derogatory

collection Account.

89.     Due to Defendants' violations of the FDCPA, Plaintiff has suffered damages, including loss of his personal time, harm to his credit and credit score, worry, anxiety, physical sickness, physical pain, stress, headaches, loss of sleep, distress, frustration, embarrassment, and humiliation.  Plaintiff is entitled to statutory damages, and actual damages in an amount to be determined by the jury.

90.     Plaintiff also requests attorneys' fees and costs due to Defendant's violations of the FDCPA pursuant to 15 U.S.C. §1692k.

**COUNT FOUR**
**(Defamation, Libel, and Slander)**

91.     The Plaintiff adopts the averments and allegations of paragraphs 22 through 90 hereinbefore as if fully set forth herein.

92.     Defendants willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large.  Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish, and emotional distress.

93.     Said communications were false in that Plaintiff was not indebted to Defendants. Plaintiff did not owe any balance on the Account the subject of this action as said Account was clearly fraudulent.

94.     Defendants' false and defamatory statements have harmed the reputation of Plaintiff and/or deterred third persons from associating with Plaintiff.  Specifically, Defendants reported the Account to the CRAs as belonging to Plaintiff so the Account would appear

on Plaintiff's credit reports. Plaintiff's credit reports were viewed by numerous third parties as set out above and Plaintiff suffered damages.

95.     Defendants communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including but not limited to reporting that Plaintiff owed the Account the subject of this action.

96.     At the time said communications were made, Defendants knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

97.     As a result of Defendants' intentional communications to third parties of the false information, Plaintiff was caused to suffer injury to his reputation in the eyes of his community and the public at large, and was forced to endure credit reporting of the Account in spite of the fact that Plaintiff did not owe the Account as it was fraudulently opened in his name without his knowledge or permission.

98.     As a proximate consequence of said defamation, libel and slander, to suffer injury to his reputation, and suffer economic loss due to the actions of Defendants. Additionally, Plaintiff was caused to suffer lost time, loss of enjoyment of life, embarrassment, humiliation, anxiety, loss of sleep, anger, physical pain and sickness, worry, mental anguish and emotional stress for which he claims compensatory damages.

99.     Due to the intentional or reckless disregard of Plaintiff's rights as set forth herein, Plaintiff is entitled to and seeks punitive damages against Defendants for its libelous

conduct.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendants for the following:

A.     Actual and statutory damages from Defendants pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendants pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorneys; fees from Defendants pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.     For relief in amounts or other appropriate relief as may be determined by the Court pursuant to 15 U.S.C. §1692 to include Plaintiff's actual damages, statutory damages of one thousand dollars ($1,000.00) for Plaintiff, as well as attorney's fees and costs pursuant to 15 U.S.C. §1692 from Defendants.

E.     For compensatory and punitive damages in an amount to be determined by a struck jury for Defendants' defamation, libel and slander of Plaintiff;

F.     For this matter to be heard by a jury; and

G.     For such other and further relief as this Court deems necessary and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed.  ID No.  10323
*Attorney for Plaintiff*

19

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ *Penny Hays Cauley*
Penny Hays Cauley

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL:**

LVNV Funding, LLC
c/o Corporation Service Company – Registered Agent
100 Coastal Drive, Suite 210
Charleston, South Carolina 29492

Resurgent Capital Services L.P.
c/o Corporation Service Company – Registered Agent
100 Coastal Drive, Suite 210
Charleston, South Carolina 29492